219 P.3d 1084

**Michael P. DUPREE,**
Petitioner/Appellant–
Appellee,

v.

**Roy T. HIRAGA, Clerk of the County of Maui, and Solomon P. Kaho'ohalahala,**
Respondents/Appellees–Appellants.

No. 29464.

Supreme Court of Hawai'i.

Oct. 20, 2009.

"[f]or purposes of [the November 2008] election[.]"

The case began in September 2008, when appellee Michael P. Dupree and eleven other registered voters from Lāna'i sent letters to Hiraga, the Clerk of the County of Maui, which alleged that Kaho'ohalahala was not a Lāna'i resident. Hiraga subsequently found, inter alia, that Kaho'ohalahala was a Lāna'i resident when he registered to vote there in July 2008. Dupree appealed that determination to the Board, which concluded that Kaho'ohalahala was in fact a resident of Lahaina rather than Lāna'i.

The questions on appeal include whether: (1) the Board lacked jurisdiction because Dupree's complaint was an untimely challenge to Kaho'ohalahala's eligibility to be a candidate for the Lāna'i seat on the Maui County Council, rather than to his voter registration, (2) the Board exceeded its jurisdiction by addressing issues beyond Kaho'ohalahala's voter registration, and (3) the Board erred in concluding that Kaho'ohalahala was not a Lāna'i resident.

For the reasons set forth below, we conclude that the Board had jurisdiction to hear the appeal, the Board did not exceed its jurisdiction by addressing issues beyond Kaho'ohalahala's voter registration status, and the Board did not err in concluding that Kaho'ohalahala did not have the right to remain a registered voter of Lāna'i. Accordingly, we affirm the Board's November 1, 2008 decision.

Kenneth Kupchak, Robert Thomas and Christi–Anne Kudo Chock (of Damon Key Leong Kupchak Hastert), Honolulu, for petitioner/appellant-appellee.

Brian T. Moto, Corporation Counsel, and Jane Lovell, Deputy Corporation Counsel, County of Maui, for respondent/appellee-appellant Roy T. Hiraga.

Benjamin E. Lowenthal, Wailuku, for respondent/appellee-appellant Solomon Kaho ohalahala.

MOON, C.J., NAKAYAMA, ACOBA, DUFFY, and RECKTENWALD, JJ.

Opinion of the Court by
RECKTENWALD, J.

Roy T. Hiraga and Solomon P. Kaho'ohalahala appeal from the November 1, 2008 decision of the Board of Registration for Maui County (Board) which determined that Kaho'ohalahala was not a resident of Lāna'i

## I. BACKGROUND

### A. Dupree and other Lāna'i residents submit complaints to Hiraga concerning Kaho'ohalahala's residency

Kaho'ohalahala was originally from the island of Lāna'i. He was registered to vote on Lāna'i from June of 1982 until July of 2006, when he registered to vote as a resident of Lahaina, Maui. In July of 2008, he registered to vote as a resident of Lāna'i City, with an address on Fraser Avenue, and also filed nomination papers to run for the Lāna'i seat

on the Maui County Council.[1] Two of the qualifications for election to the Maui County Council are that the candidate must be a voter in Maui County and must be, at the time of filing nomination papers, a resident in the area from which the person seeks to be elected.[2] Kahoʻohalahala's nomination papers included a certification by Kahoʻohalahala that he met those qualifications.[3] Hiraga did not receive any challenges to Kahoʻohalahala's nomination papers prior to the September 20, 2008 primary.[4] Kahoʻohalahala voted in the primary as a Lānaʻi resident, and finished first among the five candidates who ran for the Lānaʻi seat. He and the candidate receiving the second highest number of votes, John Ornellas, advanced to the November 4, 2008 general election.

On September 23, 2008, Hiraga received two letters from Lānaʻi City residents. The letters were identical in form, and stated as follows:

It is my understanding that you are responsible for investigating complaints made regarding elections in Maui County, Hawaii. In the 2008 primary election for the Maui County Council[,] Sol P. Kahoʻohalahala represented himself as a resident of Lānaʻi. Although his father resides here and he established a Post Office Box in order to receive mail, it is widely believed that he actually resides with his wife on Maui.

Would you please investigate his claim to residency here? Many residents of this island would like to know what the criteria [are] for establishing residency. I would like to know how to proceed to file a claim that Mr. Kahoʻohalahala falsified documents filed with his signature to run for the office of Maui County Council, Lānaʻi Seat.

One of the writers added a handwritten note at the bottom which stated, "In the nine yrs. I've lived here I have never seen Sol at the gas station, stores, Bank or Post Office! This is a small island; Where is he?"

On September 24, 2008, Hiraga wrote to Kahoʻohalahala as follows:

The Office of the County Clerk, County of Maui, has received two written chal-

---

1. Maui County Charter, Section 3–1, provides for a County Council composed of nine members, one from each of the following areas: Lānaʻi, Molokaʻi, East Maui, West Maui, South Maui, Kahului, Makawao–Haʻikū—Pāʻia, Pukalani–Kula–ʻUlupalakua, and Wailuku–Waiheʻe–Waikapū. Maui County Charter § 3–1 (2003), *available at* http://www.co.maui.hi.us/index.aspx?nid=162.

2. The qualifications for County Council members are set forth in Maui County Charter, § 3–3:
 **Section 3–3 Qualifications.** To be eligible for election or appointment to the council, a person must be a citizen of the United States, a voter in the county, a resident of the county for a period of ninety (90) days next preceding the filing of nomination papers and at the time of filing of nomination papers a resident in the area from which the person seeks to be elected. If a council member ceases to be a resident of the county, or ceases to be a resident of the council member's residency area during the council member's term of office, or if a council member is adjudicated guilty of a felony, the council member shall immediately forfeit office and the seat shall thereupon become vacant.

3. **HRS § 12–3 (Supp.2005) Nomination paper; format; limitations.** (a) No candidate's name shall be printed upon any official ballot to be used at any primary, special primary, or special election unless a nomination paper was filed in the candidate's behalf and in the name by which the candidate is commonly known. The nomination paper shall be in a form prescribed and provided by the chief election officer containing substantially the following information:
 
 . . . .
 
 (3) The residence address and county in which the candidate resides;
 
 . . . .
 
 (6) A sworn certification by self-subscribing oath by the candidate that the candidate qualifies under the law for the office the candidate is seeking and that the candidate has determined that, except for the information provided by the registered voters signing the nomination papers, all of the information on the nomination papers is true and correct[.]

4. **HRS § 12–8 (Supp.1999) Nomination papers; challenge; evidentiary hearings and decisions.** (a) All nomination papers filed in conformity with section 12–3 shall be deemed valid unless objection is made thereto by a registered voter, an officer of a political party whose name is on file with the chief election officer, the chief election officer, or the county clerk in the case of a county office. All objections shall be filed in writing not later than 4:30 p.m. on the thirtieth day or the next earliest working day prior to the primary or special election.
 
 . . . .

lenges to your voter registration, pursuant to Section 11–25 [1993], Hawaii Revised Statutes. [5] The challenge alleges that you do not reside on the Island of Lanai.

You are hereby informed that our Office will conduct an investigation as soon as possible and will subsequently issue a ruling on the challenge. As part of our investigation, we request that you respond to the challenge allegation, i.e., that you do not reside at [ ] Fraser Avenue. [6] Please send your response to our Office no later than October 3, 2008.

. . . .

Kahoʻohalahala responded on October 3, 2008. He submitted an affidavit dated October 2, 2008, in which he stated that "I am a resident of Lanaʻi City," that "[m]y residence is fixed at [ ] Fraser Avenue, Lanaʻi City and whenever I am absent from the island of Lanaʻi, I intend to return[,]" and that at the time of "fixing my residence in Lanaʻi City, it was with the intention of making it my permanent dwelling place." Kahoʻohalahala also stated that his family has continuously lived on Lānaʻi throughout his life, that he had "filed an affidavit of voter registration with the belief and understanding that [he is] a legal resident of Lanaʻi because of [his] permanent residence at [ ] Fraser Avenue[,]" and that he had filed nomination papers and voted in the primary "with the belief and understanding" that he was a legal resident of Lānaʻi.

Kahoʻohalahala also submitted an affidavit by his brother, Gaylien Kahoʻohalahala, in which Gaylien stated that Gaylien was a resident of Lānaʻi City and "[i]n the beginning of July, 2008, [Kahoʻohalahala] telephoned me and discussed with the family his intention of returning to Lanaʻi to live." Gaylien further stated that "[w]e welcomed [Kahoʻohalahala's] return home and he presently resides at [ ] Fraser Avenue and resided there since the beginning of July, 2008."

Kahoʻohalahala also submitted a response arguing that the letters were not challenges to his voter registration status under HRS § 11–25, but were challenges to his nomination papers under HRS § 12–8. Kahoʻohalahala noted that HRS § 12–8 required objections to have been made to his nomination papers, which included a sworn statement declaring his residency, no later than thirty days prior to the September 20, 2008 primary election, that no timely objections were made, and that his nomination papers were therefore presumptively valid. Kahoʻohalahala argued that the complaints were "underhanded attempt[s] to circumvent the legal requirements for proper objections to nomi-

---

**5. HRS § 11–25 Challenge by voters; grounds; procedure.** (a) Challenging prior to election day. Any registered voter may challenge the right of a person to be or to remain registered as a voter in any precinct for any cause not previously decided by the board of registration or the supreme court in respect to the same person; provided that in an election of members of the board of trustees of the office of Hawaiian affairs the voter making the challenge must be registered to vote in that election. The challenge shall be in writing, setting forth the grounds upon which it is based, and be signed by the person making the challenge. The challenge shall be delivered to the clerk who shall forthwith serve notice thereof on the person challenged. The clerk shall, as soon as possible, investigate and rule on the challenge.

(b) Challenging on election day. Any voter rightfully in the polling place may challenge the right to vote of any person who comes to the precinct officials for voting purposes. The challenge shall be on the grounds that the voter is not the person the voter alleges to be, or that the voter is not entitled to vote in that precinct; provided that only in an election of members of the board of trustees of the office of Hawaiian affairs, a person registered to vote in that election may also challenge on the grounds that the voter is not Hawaiian. No other or further challenge shall be allowed. Any person thus challenged shall first be given the opportunity to make the relevant correction pursuant to section 11–21. The challenge shall be considered and decided immediately by the precinct officials and the ruling shall be announced.

(c) If neither the challenger nor the challenged voter shall appeal the ruling of the clerk or the precinct officials, then the voter shall either be allowed to vote or be prevented from voting in accordance with the ruling. If an appeal is taken to the board of registration, the challenged voter shall be allowed to vote; provided that ballot is placed in a sealed envelope to be later counted or rejected in accordance with the ruling on appeal. The chief election officer shall adopt rules in accordance with chapter 91 to safeguard the secrecy of the challenged voter's ballot.

**6.** We have deleted residential street numbers for purposes of this opinion.

nation papers and challenges to election results." Additionally, Kahoʻohalahala argued that the complaints constituted a challenge to an election pursuant to HRS § 11–172 (1993),[7] and that the Office of the County Clerk of Maui did not have jurisdiction to hear such a challenge. He requested that Hiraga dismiss the September 23, 2008 complaint letters as untimely challenges to his nomination papers and for lack of jurisdiction to decide election contest complaints.

Meanwhile, between September 24, 2008 and October 3, 2008, Hiraga received ten additional letters from Lānaʻi residents. Six letters were identical to the September 23, 2008 letters. The content of the other letters varied. One resident submitted a letter alleging that Kahoʻohalahala falsified his residence on his filing papers, that Kahoʻohalahala's siblings resided at [ ] Fraser Avenue in Lānaʻi, and that Kahoʻohalahala actually resided in Lahaina, Maui. This resident requested that Hiraga disqualify "Kahoʻohalahala['s] results from the [September 20, 2008 primary][,]" "exclude him from the General Election[,]" and "restore Alberta de Jetley's eligibility in the General Election."

Alberta de Jetley, an unsuccessful candidate in the primary election, submitted a complaint letter alleging that Kahoʻohalahala's "statement to the Maui News about maintaining his residency on Lanai while working for the Kahoolawe Commission is false." De Jetley requested that Hiraga "investigate this matter so [that] we, the registered voters of Lanai, can move on and elect someone who is truly a resident of this island to represent us."

Dupree submitted a complaint letter alleging that although Kahoʻohalahala was from Lānaʻi, he did not own a home, manage a business, work on, or farm on, Lānaʻi, that he had not campaigned or held rallies there, and that he had not been seen by local residents on the island. Dupree stated that Kahoʻoha-

lahala won the primary based on "off island voting patterns[,]" but that residents of Lānaʻi preferred several other candidates for the Lānaʻi seat, as they "are all local residents, and they are in touch with the pulse of Lanai[.]" Dupree requested "that off-islanders give [Lānaʻi residents] the right and opportunity to govern [them]selves[.]" Dupree stated that although Kahoʻohalahala was a "fine candidate," he should "run in the district that he currently resides in and give a current Lanai resident the opportunity to represent their home island[.]"

Another resident submitted a letter "challenging [Kahoʻohalahala's] running for County Council on behalf of the island of Lanai, or being voted into that office in the general election on November 4, 2008, based on the question of [his] permanent/legal residency on Lanai." This resident cited to the Maui County Charter and statements Kahoʻohalahala made to the Maui News. This resident asked if Kahoʻohalahala paid mortgage, rent, utility bills or property taxes in Lānaʻi, and further inquired as follows:

(1) What address did [Kahoʻohalahala] use on his Voter's Registration form; and, where is his polling address?

(2) Where did [Kahoʻohalahala] vote on September 20, 2008 in the primary? Lahaina or Lanai?

This resident requested that Hiraga "investigate Mr. Kahoʻohalahala's right to file nomination papers to run for County Council to represent the island of Lanai, based on his questionable residency in Lanai," and further requested that if Kahoʻohalahala was found in violation of the residency requirement of the Maui County Charter, that Hiraga "remove Mr. Kahoʻohalahala's name from the November 4, 2008 general election ballot; or, if the ballots have already been printed, then any votes he may receive NOT be allowed to be counted."

7. **HRS § 11–172 Contests for cause; generally.** With respect to any election, any candidate, or qualified political party directly interested, or any thirty voters of any election district, may file a complaint in the supreme court. The complaint shall set forth any cause or causes, such as but not limited to, provable fraud, overages, or underages, that could cause a difference in the election results. The complaint shall also set forth any reasons for reversing, correcting, or changing the decisions of the precinct officials or the officials at a counting center in an election using the electronic voting system. A copy of the complaint shall be delivered to the chief election officer or the clerk in the case of county elections.

## B. Hiraga's ruling on complaints

On October 10, 2008, Hiraga issued a ruling on the twelve complaint letters. Hiraga treated the complaints collectively, stating that "[g]enerally, the writers of the Complaint Letters allege that [Kaho'ohalahala] does not reside in the Lanai residency area." The ruling stated in relevant part as follows:

> The Complaint Letters challenge Mr. Kaho'ohalahala's residency based upon two separate statutory grounds, namely, [HRS § 12–8] and [HRS § 11–25].
>
> . . . .
>
> To the extent that the Complaint Letters constitute a challenge to Mr. Kaho'ohalahala's candidacy pursuant to the provisions of [HRS § 12–8], the challenge is untimely. Section 12–8 clearly provides that "All objections shall be filed in writing not later than 4:30 p.m. on the thirtieth day or the next earliest working day prior to the primary or special election." The earliest date of receipt of a Challenge Letter by the Clerk's Office was Monday [sic], September 23, 2008, two days after the Primary Election was conducted on Saturday, September 20, 2008.
>
> . . . .

The ruling went on to quote HRS § 11–13 (1993),[8] and then concluded as follows:

Eight of the twelve Complaint Letters state, ". . . it is widely believed that [Mr. Kaho'ohalahala] actually resides with his wife on Maui." Assuming, for the purpose of argument, that this widely held belief is true, [HRS § 11–13] contemplates that a person may have a residence separate and apart from his or her spouse when it states as follows: "For the purpose of this title, there can be only one residence for an individual, but in determining residency, a person may treat oneself separate from the person's spouse."

Mr. Kaho'ohalahala admits that he resided on Maui when he was director of the Kahoolawe Island Reserve Commission. However, [HRS § 11–13(5) ] states as follows: "(5) A person does not gain or lose a residency solely by reason of the person's presence or absence while employed in the service of the United States or of this State, or while a student of an institution of learning, or while kept in an institution or asylum, or while confined in prison[.]" Therefore, Mr. Kaho'ohalahala did not lose his residency due to his absence from Lanai while he was employed in service of the State.

One Complaint Letter alleges that "The [ ] Fraser Ave. address is the home of his father. His siblings, I believe, are listed on the deed of the home. His residence

---

8. **HRS § 11–13 Rules for determining residency.** For the purpose of this title, there can be only one residence for an individual, but in determining residency, a person may treat oneself separate from the person's spouse. The following rules shall determine residency for election purposes only:

 (1) The residence of a person is that place in which the person's habitation is fixed, and to which, whenever the person is absent, the person has the intention to return;

 (2) A person does not gain residence in any precinct into which the person comes without the present intention of establishing the person's permanent dwelling place within such precinct;

 (3) If a person resides with the person's family in one place, and does business in another, the former is the person's place of residence; but any person having a family, who establishes the person's dwelling place other than with the person's family, with the intention of remaining there shall be considered a resident where the person has established such dwelling place;

 (4) The mere intention to acquire a new residence without physical presence at such place, does not establish residency, neither does mere physical presence without the concurrent present intention to establish such place as the person's residence;

 (5) A person does not gain or lose a residence solely by reason of the person's presence or absence while employed in the service of the United States or of this State, or while a student of an institution of learning, or while kept in an institution or asylum, or while confined in a prison;

 (6) No member of the armed forces of the United States, the member's spouse or the member's dependent is a resident of this State solely by reason of being stationed in the State;

 (7) A person loses the person's residence in this State if the person votes in an election held in another state by absentee ballot or in person.

 In case of question, final determination of residence shall be made by the clerk, subject to appeal to the board of registration under part III of this chapter.

for approximately the last 10 years has been [ ] Fleming Road, Lahaina, HI."

The language of [HRS § 11–13(1), (2) & (4) ] makes it abundantly clear that physical presence or absence from a particular place is not the deciding factor in determining the residence of an individual. "Under section 11–13, one's *state of mind* determines one's place of residence." Atty. Gen. Op. 86–10. (Emphasis added.)

The key to deciphering Mr. Kahoʻohalahala's state of mind is found in his sworn affidavit. In it, he states:

... [.]

2. My residence is fixed at [ ] Fraser Avenue, Lanaʻi City, and whenever I am absent from the island of Lanaʻi, **I intend to return.**

3. I was born and raised on the island of Lanaʻi and retained my residence on Lanaʻi except for a brief period in which I was in the service of the State of Hawaiʻi with the Kahoʻolawe Island Reserve Commission.

4. At the time of fixing my residence in Lanaʻi City, **it was with the intention of making it my permanent dwelling place.**

... [.]

(Emphasis added.)

It is clear from the quoted portions of his sworn affidavit that Mr. Kahoʻohalahala intends to reside on the island of Lanaʻi.

The Office of the County Clerk, County of Maui, has conducted an examination of Mr. Kahoʻohalahala's voter registration history and confirms that, with the exception of the period from July 2006 to July 2008, Mr. Kahoʻohalahala's residence address of record has always been on Lanai.

. . . .

Pursuant to [HRS §§ 11–13 & –25], and based upon the foregoing discussion, to the extent that the Complaint Letters constitute a challenge to Mr. Kahoʻohalahala's right to remain a registered voter in (Lanai) District/Precinct 13/07, the challenge is not sustained.

(Emphases in original; footnotes omitted).

Hiraga notified all of the complainants of his decision, and of their right to appeal his decision to the Board of Registration pursuant to HRS § 11–26 (1993).

### C. Dupree appeals to the Board of Registration and the Board overrules Hiraga's decision

Dupree, proceeding pro se, sent an appeal letter dated October 16, 2008 to the Board of Registration. Dupree stated that he was challenging Hiraga's decision "not to sustain the challenge as to the true residency of [Kahoʻohalahala][,]" and argued in relevant part as follows:

While I would agree that according to Hawaii Revised Statutes that the challenges were received on an untimely basis, it doesn't change the truth and validity of this challenge. It doesn't change the fact that Sol Kahoʻohalahala and his brother Gaylien, may both have given false statements in their sworn affidavits. I would argue that in this specific situation an exception should be granted and further consideration be given to this challenge.

. . . .

I live at [ ] Lama Street, a few blocks from [ ] Frasier [sic] Avenue, where Sol claims that he lives. I have passed by that house almost one thousand times since July 2008, ten times a day for over one hundred days, ... when Sol supposedly returned here according to he and his brother's sworn affidavit. I have not seen him once. Not once in a hundred days or a thousand passes. I'm not surprised that Sol would distort the truth but Gaylien too? I haven't seen Sol on Lanai once this year, although I am not saying he hasn't visited, I'm saying he doesn't live here. I haven't seen him once at the post office, either bank, not at any Lanai store, nor the gas station, nor any restaurant. I haven't seen him walking, driving a car, riding a bike, surfing or paddling a canoe. He certainly is not commuting to Maui. Four times a week I take the only road down to Expeditions Ferry Service at Manele Harbor and pass everyone who is going to Maui. I see all the Lanai faces commuting on the first boat to Maui at 8:00 AM, and again I have not seen his

face once in the last three months since he moved here as he swore before a notary public. He does not commute from Lanai to Lahaina and then to Kahului; that would be impractical. The Harbor Master of Lanai, Sheri Menze, also sent a letter challenging Sol's residency because she doesn't see him either. Is he invisible, are we blind, or are he and his brother not telling the truth?

. . . .

I ask that you please uphold the challenge to Sol Kaho'ohalahala['s] true residency and help the residents of Lanai to take a step forward and not allow this dishonest man to represent our island on the Maui County Council. He misrepresent[ed] himself on his voter registration, his nomination papers and his sworn affidavit. Please remove him from the ballot and replace him with a true Lanai resident.

Kaho'ohalahala then filed a Motion to Dismiss for Lack of Jurisdiction. He argued that because there were no timely objections to his nomination papers, which included a declaration of his legal residency and registered voter status, his nomination papers were presumptively valid. Kaho'ohalahala argued that this was an election contest within the meaning of HRS § 11–172, which is within the exclusive jurisdiction of the Hawai'i Supreme Court.

On October 21, 2008, Kaho'ohalahala also filed a Petition for Writ of Mandamus (petition) with this court, which named Hiraga as the respondent. In his petition, Kaho'ohalahala similarly argued that none of the complaints challenged his voter registration, that his nomination papers were presumptively valid as there had been no timely objections, and that the complaint was an election contest within the meaning of HRS § 11–172. Kaho'ohalahala requested that this court vacate Hiraga's October 10, 2008 ruling and dismiss the underlying action because it constituted an election contest, which Hiraga did not have the jurisdiction to decide.

Kaho'ohalahala also filed with the Board a Motion for Stay of Proceedings pending disposition of his petition, and a Motion in Limine to Exclude Accepting Testimony from Witnesses by Telephone or Video. A hearing on Kaho'ohalahala's motions was held on October 27, 2008. At the hearing, Dupree argued at one point that "the fundamental reason that we are here is because one clause . . . in the Maui County charter . . . says that one of the members of the Maui County Council must be a resident of Lanai[,]" but later argued that "although in my original challenge I didn't list the word voter registration I didn't list the word nomination paper either but the thrust of the argument was that [Kaho'ohalahala] is not a resident[.]" After the hearing, the Board denied Kaho'ohalahala's motion to stay, motion to dismiss, and motion in limine to exclude testimony given by telephone or video. The Board issued an order dated October 28, 2008, denying the three motions, concluding in relevant part as follows:

*FINDINGS OF FACT*

. . . .

2. The County Clerk's October 10, 2008 ruling from which Mr. Dupree has appealed to this Board determined that the County Clerk does not have jurisdiction to determine Mr. Kaho'ohalahala's candidacy pursuant to [HRS] § 12–8.

3. The County Clerk's October 10, 2008 ruling construed Mr. Dupree's challenge to be a challenge by a registered voter under HRS § 11–25, challenging the right of Mr. Kaho'ohalahala to be a registered voter in the precinct that includes Lanai.

4. Mr. Dupree's appeal of the County Clerk's ruling was filed on October 16, 2008 and challenged the application of the rules for determining residency that were applied by the County Clerk.

. . . .

*CONCLUSIONS OF LAW*

. . . .

2. The Board of Registration for the County of Maui has jurisdiction over the parties herein, and has primary jurisdiction of the subject matter of this appeal, which is a challenge by a registered voter under HRS § 11–25, challenging the right

of Mr. Kahoʻohalahala to be a registered voter in the precinct that includes Lanai.

3. Mr. Dupree has standing to bring this appeal of the County Clerk Roy Hiraga's determination regarding the voter registration status of Solomon P. Kahoʻohalahala.

. . . .

On October 30, 2008, this court denied Kahoʻohalahala's petition for writ of mandamus, holding in relevant part as follows:

> Upon consideration of the petition for a writ of mandamus filed by petitioner Solomon P. Kahoohalahala and the papers in support, it appears that respondent's October 10, 2008 ruling did not decide whether petitioner was nominated or elected as a candidate in the September 20, 2008 primary election, but decided only that the challenges to petitioner's nomination papers were untimely and that petitioner is a registered voter on Lanai. The October 10, 2008 ruling was not tantamount to a judgment in a primary election contest given pursuant to HRS § 11–173.5(b) (1993), but was a ruling only on a challenge to nomination papers and on a person's voter registration status. Jurisdiction to render such ruling was with respondent pursuant to HRS §§ 12–8(b) (1993) and 11–25(a) (1993).

*Kahoʻohalahala v. Hiraga*, No. 29415, 2008 WL 4769470, at *1 (Haw. Oct. 30, 2008).

A hearing was held on Dupree's appeal on October 31, 2008. Board chair John Henry characterized Dupree's appeal as a "challenge to [ ] Kahoʻohalahala's right to remain a registered voter on Lanai" pursuant to HRS §§ 11–13 and 11–25.[9] Dupree initially presented his appeal as a "challenge of voter registration[,]" but also argued that Kahoʻohalahala registered to vote on Lānaʻi so that he could "file his nomination papers for candidacy." Counsel for Kahoʻohalahala objected that the Board "has already deter-

mined that it's not hearing questions related to candidacy[,]" and that any evidence "along those lines [ ] is irrelevant and immaterial[.]" The Board sustained the objection. Counsel for Hiraga joined in the objection, additionally noting that "this Board does not have jurisdiction to consider such matters." The Board agreed, and asked Dupree to "keep it to his voter registration."

Dupree argued that Kahoʻohalahala's residence was fixed in Lahaina, and that Lahaina is where Kahoʻohalahala intends to return to whenever he is away. Dupree argued that although Kahoʻohalahala registered to vote in Lānaʻi in July of 2008, he lacked the present intention and corresponding physical presence necessary to be a Lānaʻi resident.

When asked if he had any personal knowledge about where Kahoʻohalahala sleeps at night or resides, Dupree testified that he "kn[e]w [that Kahoʻohalahala] was on the island [of Lānaʻi] last weekend because ... he showed up at the Aloha Festival and stayed overnight a couple of nights[.]" Dupree also testified that he had heard that Kahoʻohalahala was at a political rally just before the primary.

Dupree then called Ron McComber to testify.[10] McComber testified in part as follows:

> **[McComber]:** I've lived on Lanai for thirty nine years, I've known [Kahoʻohalahala] for those thirty nine years, sometimes he lived down there and sometimes ah he doesn't. What I'm saying is now for the, the past probably ten years he has not physically lived on Lanai, that's, that's addressing the, the problem of him living on Lanai, he has not lived there.
>
> **[Dupree]:** And ah as of July [2008] has he returned to the island to live on the island.
>
> **[McComber]:** For _____.
>
> **[Dupree]:** As far as your understanding.

---

9. Written transcripts of the October 27 and 31, 2008 hearings are part of the record on appeal. The record does not indicate who prepared the transcripts. Although Hiraga identifies two passages that he asserts were inaccurately transcribed, all parties cite to the transcripts in their briefs, and do not otherwise dispute their accuracy or authenticity.

10. Ron McComber's name is spelled in several different ways in the transcript and the briefs. For the purposes of this opinion, we adopt the spelling used by the Board in its November 1, 2008 decision.

[McComber]: As far as I know, he's come back one time since that time and it was for that rally, and he has not lived on Lanai.

[Dupree]: Um, and so, you're [sic] detection is that he's not an actual resident of the island?

[McComber]: That is my understanding, I live there, and it's a very small island, not very many things go on Lanai that people don't know, and the population of the island is very rare [sic] of who comes and who goes, who lives, who isn't. It's kind of a, a melting pot and there is no indication that I can find anywhere from anybody that [Kahoʻohalahala] has moved back there and lived there for the last, at least, ten years.

A Board member then asked McComber if, since July of 2008 when Kahoʻohalahala registered to vote on Lānaʻi, McComber had seen "any signs that [ ] he had established ... any material goods there, a car, or moving van, anything along that line[.]" McComber testified that he had "not seen [Kahoʻohalahala] come back over there, and move in, move clothes in, bring a car over there. His brother picks him up at the dock and, and drives him around, he does not have a car that I know of over there."

Counsel for Kahoʻohalahala then moved for a directed order or decision that Dupree "has not by preponderance of evidence presented sufficient [ ] evidence to support [the] overturning of Mr. Hiraga's [decision][,]" and deputy corporation counsel joined in that motion. The Board denied the motion, and corporation counsel called Hiraga to testify.

Hiraga testified that subsequent to receiving the complaint letters alleging that Kahoʻohalahala was not a Lānaʻi resident, he conducted an investigation which included researching Kahoʻohalahala's voter registration history. Hiraga testified that Kahoʻohalahala's voter registration records dated back to 1982, and that Kahoʻohalahala had been continuously registered to vote on Lānaʻi with the exception of the period from July 2006 to July 2008. He also testified that it was his understanding that during those two years, Kahoʻohalahala was employed by the State of Hawaiʻi.

Ellen Pelesaro[11] then testified for Kahoʻohalahala. She testified that she had known Kahoʻohalahala since 1991, and that Kahoʻohalahala's family had been on Lānaʻi for seven generations. Pelesaro testified that Kahoʻohalahala had an "immense love affair with [the island of Lānaʻi]," and that "he came right back from college and went to work there and began to do community service on that island that led ultimately to his running for office." She testified that Kahoʻohalahala had held a number of elective offices requiring Lānaʻi residency. He had previously held the Lānaʻi seat on the Maui County Council, was on a citizen's advisory committee, was a state representative, and was the Lānaʻi representative to the Hawaiian Sovereignty Commission. Pelesaro stated that when Kahoʻohalahala previously represented Lānaʻi on the Maui County Council, he commuted to and from work on Maui because he received an allowance for that purpose.

Pelesaro testified that Kahoʻohalahala had recently served as Executive Director of the Kahoʻolawe Island Reserve Commission, and that he was currently employed by the state as an instructor at Maui Community College (MCC). She testified that he resided with his wife at an address on Fleming Road in Lahaina while employed at the Commission and MCC because "they've got no appointment for him to commute." During a break between his employment with the Commission and MCC, Kahoʻohalahala was on Lānaʻi "for awhile" as well, helping to care for family members. Pelesaro testified that Kahoʻohalahala's wife was the Vice Principal at Lahainaluna School, and Pelesaro did not know if she joined him on Lānaʻi during that period.

Pelesaro stated that "[Kahoʻohalahala] and his wife had talked as long as [she had] known them, about remaining on Lanai for the rest of their lives, their children are

11. There are different spellings of her name in the record. For purposes of this opinion, we adopt the spelling used by the Board.

there, their grandchildren are there, ... it was work related why he had to physically not be there all the time." She also testified that she knew Kahoʻohalahala to be truthful, and that she did not believe he would lie under oath.

The Board asked for the opportunity to ask Kahoʻohalahala some "questions for clarification," but his counsel objected and the Board responded that it would "not yield to ask him questions[.]"

▆▆▆ The Board entered the following decision dated November 1, 2008, sustaining Dupree's appeal and overruling Hiraga's October 10, 2008 decision: [12]

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION

. . . .

### FINDINGS OF FACT

#### Mr. Dupree's Complaint to the County Clerk

. . . .

2. Mr. Kahoʻohalahala is a candidate for the Maui County Council for the seat designated for the resident of the Island of Lanaʻi for the 2008 general election.

3. By letter received September 29, 2008, Mr. Phoenix Dupree, also known as Michael Phoenix Dupree, also known as Phoenix, a registered voter of the State of Hawaiʻi, filed a challenge to Mr. Kahoʻohalahala's right to be or to remain registered as a voter of the Lanai District/Precinct 13/07.

4. Mr. Dupree contends that while Mr. Kahoʻohalahala is from Lanaʻi and has family on Lanaʻi, he is in fact not a resident of Lanaʻi.

5. Based primarily on Mr. Kahoʻohalahala's stated intention of establishing his residence in Lanaʻi City, with the intention of making it his permanent dwelling place, the County Clerk concluded that "with the exception of the period from July 2006 to July 2008, Mr. Kahoʻohalahala's residence

address of record has always been on Lanaʻi." Accordingly, the County Clerk determined that Mr. Dupree's challenge was not sustained.

#### Mr. Dupree's Appeal to the Board of Registration

6. By letter dated October 16, 2008, ... Mr. Dupree appeals the County Clerk's decision that Solomon P. Kahoʻohalahala is a registered voter in (Lanaʻi) District/Precinct 13/07.

7. Up until July 10, 2006, Mr. Kahoʻohalahala resided at [ ] Akolu Place, Lanaʻi City, Lanaʻi, Hawaiʻi 96763.

8. On or about July 10, 2006, Mr. Kahoʻohalahala changed his residence from Lanaʻi to [ ] Fleming Road, Lahaina, Maui[.]

9. On or about July 15, 2008, Mr. Kahoʻohalahala changed his residence to [ ] Fraser Avenue, Lanaʻi City, ... where his brother and his brother's family reside.

10. Mr. Kahoʻohalahala is employed by the Research Corporation of the University of Hawaiʻi as an instructor/facilitator at Maui Community College, at its campus in Wailuku, Maui[.]

11. Mr. Kahoʻohalahala is married to Lynn Kahoʻohalahala, who is a vice principal at Lahainaluna High School, in Lahaina, Maui[.]

12. While originally from Lanaʻi, and while his brother continues to live on Lanaʻi, Mr. Kahoʻohalahala does not own or work for a business on Lanaʻi, nor does he own or rent a house or keep a car on Lanaʻi.

13. Mr. Dupree has lived on Lanaʻi since 1991 and is currently employed as the general manager of the Blue Ginger Café. He presented Ron McComber, a resident of Lanaʻi, as a witness who testified that he has not seen Mr. Kahoʻohalahala on Lanaʻi.

14. Since July 2008 (when Mr. Kahoʻohalahala claims that he moved back to Lanaʻi), Mr. Dupree has not seen Mr.

12. The decision is dated November 1, 2008, but there is no indication in the record of when it was served. However, Hiraga states in his opening brief, and the other parties do not dispute, that they were served on November 12, 2008.

Kahoʻohalahala at the post office, either bank, the Lanaʻi store, the gas station, or any restaurant on Lanaʻi.

15. The County Clerk received letters from eleven other residents of Lanaʻi disputing Mr. Kahoʻohalahala's Lanaʻi residency.

16. In support of his claim of residency on the island of Lanaʻi, Mr. Kahoʻohalahala submitted an affidavit in which he states that he "was born and raised on the island of Lanaʻi and retained [his] residence on Lanaʻi except for a brief period in which [he] was in the service of the State of Hawaiʻi with the Kahoʻolawe Island Reserve Commission."[1 [13]]

17. Mr. Kahoʻohalahala further states that his family has continuously lived on the island of Lanaʻi throughout his life and that it is his understanding that he is a legal resident of Lanaʻi because [ ] his permanent residence is, and was at the time he filed his nomination papers, [ ] Fraser Avenue, Lanaʻi City.

18. Mr. Kahoʻohalahala's brother, Gaylien, also submitted an affidavit in which he states that Mr. Kahoʻohalahala talked with him about returning to Lanaʻi to live and that Mr. Kahoʻohalahala has resided at [ ] Frazer [sic] Avenue since [the] beginning of July, 2008.

19. Other than Mr. Kahoʻohalahala's self-proclaimed intention, which was corroborated by his brother, and a witness testifying as to his veracity, no evidence was presented regarding his abandonment of his residency in Lahaina and his permanent relocation to Lanaʻi.[14]

### CONCLUSIONS OF LAW

. . . .

3. Appellant Michael P. Dupree has standing to bring this appeal of County Clerk Roy T. Hiraga's decision regarding Mr. Dupree's challenge to Solomon P. Kahoʻohalahala's residency for election purposes. [HRS] § 11–25 ("Any registered voter may challenge the right of a person to be or to remain registered as a voter in any precinct for any cause not previously decided by the board of registration or the supreme court in respect to the same person[.]")

---

**13.** The Board's decision included a footnote at this point, which stated the following:

> The County Clerk concluded that Mr. Kahoʻohalahala "did not lose his residency due to his absence from Lanai while he was employed in the service of the State", however, Mr. Kahoʻohalahala legally changed his residency from Lanaʻi to Lahaina on July 10, 2006.

**14.** It must be noted that the Board's findings made only a passing reference to Pelesaro, who was Kahoʻohalahala's only witness at the October 31, 2008 Board hearing. Also, although FOF 5 summarized Hiraga's October 10, 2008 ruling, the Board did not discuss the details of Hiraga's testimony in its findings. *See Application of Hawaii Elec. Light Co., Inc.,* 60 Haw. 625, 641–42, 594 P.2d 612, 623 (1979) ("The requirement that the [agency] set out findings of fact and conclusions of law is no mere technical or perfunctory matter. The purpose of the statutory requirement that the agency set forth separately its findings of fact and conclusions of law is to assure reasoned decision making by the agency and enable judicial review of agency decisions.") (citations omitted). In that regard, " '[a]n agency's findings must be sufficient to allow the reviewing court to track the steps by which the agency reached its decision.' " *Nakamura v. State,* 98 Hawaiʻi 263, 276, 47 P.3d 730, 743 (2002) (Acoba, J., joined by Ramil, J., concurring

in part and dissenting in part) (quoting *Kilauea Neighborhood Ass'n v. Land Use Comm'n,* 7 Haw. App. 227, 230, 751 P.2d 1031, 1034 (1994)) (brackets omitted). As this court has stated:

> The circumstance that the evidence is in the transcript and that the court, by weighing it, can determine for itself 'the facts' does not suffice. The agency is the fact finder, and the undigested transcript is not a substitute for a set of findings of fact. Nor should a court be put in a position wherein it is forced to ferret out the facts[.]

*Hawaii Elec. Light Co.,* 60 Haw. at 642, 594 P.2d at 623–24 (citation and ellipsis omitted). Thus, although the Board's ultimate decision was not clearly erroneous for the reasons set forth in section IV.B *infra,* it is important for administrative agencies to be complete in their factual findings to encourage confidence in "reasoned decision making by the agency." *Nakamura,* 98 Hawaiʻi at 276, 47 P.3d at 743 (Acoba, J., joined by Ramil, J., concurring in part and dissenting in part) (citation omitted); *cf. Igawa v. Koa House Restaurant,* 97 Hawaiʻi 402, 412, 38 P.3d 570, 580 (2001) (Acoba, J., concurring in part and dissenting in part) ("Findings and conclusions by an administrative agency in a contested case must be reasonably clear to enable the parties and the court to ascertain the basis of the agency's decision.").

4. Pursuant to the Maui County Charter Section 3-1, the Council shall be composed of nine members elected at large, and as it pertains to this case, one of whom shall be a resident of the island of Lana'i.

5. Pursuant to Maui County Charter Section 3-3, to be eligible for election or appointment to the council, a person must be a citizen of the United States, a voter in the county, a resident of the county for a period of ninety (90) days next preceding the filing of nomination papers and at the time of the filing of nomination papers, a resident in the area from which the person seeks to be elected.

6. Pursuant to [HRS] § 11-13(1), for election purposes, Mr. Kaho'ohalahala's residence is that place in which his habitation is fixed, and to which, whenever he is absent, he intends to return.

7. Pursuant to [HRS] § 11-13(2), "[a] person does not gain residency in any precinct into which the person comes without the present intention of establishing the person's permanent dwelling place within such precinct."

8. Pursuant to [HRS] § 11-13(3), "[i]f a person resides with the person's family in one place, and does business in another, the former is the person's place of residence; but any person having a family, who establishes the person's dwelling place other than with the person's family, with the intention of remaining there shall be considered a resident where the person has established such dwelling place."

9. Pursuant to [HRS] § 11-13(4), "[t]he mere intention to acquire a new residence without physical presence at such place, does not establish residency, neither does mere physical presence without the concurrent present intention to establish such place as the person's residence."

10. Pursuant to [HRS] § 11-13(5), "[a] person does not gain or lose a residence solely by reason of the person's presence or absence while employed in the service of the United States or of this State, or while a student of an institution of learning, or while kept in an institution or asylum, or while confined in a prison."

11. A rational, sensible, and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable, inasmuch as the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality. *Morgan v. Planning Department, County of Kauai*, 104 Hawai'i 173, 86 P.3d 982 (2004).

12. In order to relinquish one's domicile or residence there must be an intent to remain permanently at the new place where one is physically present and to simultaneously abandon the previously permanent place of abode. Acquisition of the new domicile must have been completed and the *animus* to remain in the new location fixed, before the former domicile can be considered lost. *See Akata v. Brownell*, 125 F.Supp. 6 (D.Hawai'i 1954); *Powell v. Powell*, 40 Haw. 625 (1954); *Anderson v. Anderson*, 38 Haw. 261 (1948); *Zumwalt v. Zumwalt*, 23 Haw. 376 (1916). Residence is not lost by a temporary absence nor by maintaining a temporary home elsewhere. *Hurley v. Knudsen*, 30 Haw. 887 (1929).

13. The party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion by a preponderance of the evidence. [HRS] § 91-10(5); [Hawai'i Administrative Rules (HAR) ] § 2-51-43(h).

14. Mr. Dupree, as the person initiating the proceeding, presented sufficient credible evidence to prove by a preponderance that Mr. Kaho'ohalahala did not abandon his residence in Lahaina, Maui, ... and did not relocate his permanent residence to Lana'i City, Lana'i[.]

## DECISION

Based upon the foregoing findings of fact and conclusions of law, the Board sustains Mr. Dupree's appeal of the County Clerk's October 10, 2008, determination and the County Clerk's decision is hereby overruled. For purposes of this 2008 election, Mr. Kaho'ohalahala is a resident of Lahaina, Maui[.]

In the event of an appeal of this decision, Mr. Kahoʻohalahala shall be allowed to vote "provided that the ballot is placed in a sealed envelope to be later counted or rejected in accordance with the ruling on appeal." *See* [HRS] § 11–25(c).

. . . .

Three days after the issuance of the Board's decision, Kahoʻohalahala won the general election for the Lānaʻi seat on the Maui County Council.

Hiraga and Kahoʻohalahala both appealed to the Intermediate Court of Appeals from the Board's November 1, 2008 decision. On June 10, 2009, Dupree applied for mandatory and discretionary transfer of the appeal to this court. On July 1, 2009, this court granted the transfer on both grounds.

## II. ISSUES ON APPEAL

Kahoʻohalahala raises the following issues on appeal:

1) "The Board lacked jurisdiction to hear and resolve Dupree's appeal because Dupree never challenged Kahoʻohalahala's voter-registration status." Specifically, Kahoʻohalahala challenges Findings of Fact (FsOF) No. 3 and 4 and Conclusions of Law (CsOL) No. 2 and 3 of the order denying his motion to dismiss, and FOF No. 3 and CsOL No. 2–5 of the Board's November 1, 2008 decision.

2) "The Board erred in reversing the clerk's ruling because Dupree failed to adequately prove that Kahoʻohalahala['s] residence was Lahaina, Maui." Specifically, Kahoʻohalahala challenges FsOF No. 5, 7, 8, 13, 14, 16 and 19 and CsOL No. 4–6, 12, and 14 of the Board's November 1, 2008 decision.

Hiraga raises the following issues:

1) "The [Board] exceeded its statutory authority and jurisdiction[.]" Hiraga ar-

gues that although the Board has jurisdiction to determine voter registration eligibility, "the [Board's] decision improperly expanded the Board's jurisdiction to rule on whether Kahoʻohalahala's candidacy for County office met the criteria set out in the County Charter" and it lacked jurisdiction to determine residency "for election purposes." Specifically, Hiraga challenges FsOF No. 2 and CsOL Nos. 3, 4, 5, and 6, and the "Decision" section of the Board's November 1, 2008 decision.

2) "The [Board] erred in considering and relying on immaterial and irrelevant criteria for residency[,]" including the letters of citizen complainants who did not appeal Hiraga's opinion or testify at the hearing on appeal,[15] as well as whether Kahoʻohalahala worked on Lanaʻi, owned a house or business there, kept a car there, or had been seen by Dupree there. Specifically, Hiraga challenges FsOF 12, 13, 14, and 15.

3) CsOL No. 3, 4, 5, and 6 are erroneous because "the [Board] lacked statutory authority and jurisdiction to draw these legal conclusions." In addition, COL No. 14 "does not accurately state the law and is not supported by the evidence."

4) "The [Board] erred in concluding that Dupree had met his burden of proof[.]"

## III. STANDARDS OF REVIEW

### A. Administrative Agency Conclusions of Law and Findings of Fact

While the parties agree that findings of fact should be reviewed for clear error and conclusions of law should be reviewed under the right/wrong standard, they disagree on the standard applicable to the Board's ultimate determination that Kahoʻohalahala was

---

15. However, Hiraga failed to provide any argument in his brief with regard to whether it was appropriate for the Board to rely on the letters from the other complainants, and accordingly this point is waived. Hawaiʻi Rules of Appellate Procedure (HRAP) Rule 28(b)(7) ("Points not argued may be deemed waived."). In any event, although the Board referred to the letters in FOF

No. 15, there is no indication that the Board relied on the letters in reaching its decision. Moreover, HAR § 2–51–43(h) provides that "rules of evidence in HRS § 91–10 shall be applicable" to appeals to the Boards of Registration, and HRS § 91–10(1) provides, with some limitations, that "any oral or documentary evidence may be received."

a resident of Lahaina rather than Lānaʻi. Kahoʻohalahala states that findings of fact and conclusions of law that present mixed questions of law and fact are reviewed under the clearly erroneous standard. Hiraga states that the principle issue in this case is whether he correctly interpreted HRS § 11–13 that Kahoʻohalahala was a Lānaʻi resident, which is a conclusion of law reviewable under the right/wrong standard. Dupree states that the Board's determination that Kahoʻohalahala was not a Lānaʻi resident is entitled to "a presumption of validity[,"] citing *Keliipuleole v. Wilson*, 85 Hawaiʻi 217, 226, 941 P.2d 300, 309 (1997).

In *Del Monte Fresh Produce (Hawaii), Inc. v. Int'l Longshore & Warehouse Union*, 112 Hawaiʻi 489, 146 P.3d 1066 (2006), this court identified the applicable standard of review as follows:

> An agency's conclusions of law are reviewed de novo, while an agency's factual findings are reviewed for clear error. *A conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case.*
>
> As a general matter, a finding of fact or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Id.* at 499, 146 P.3d at 1076 (emphasis added) (internal quotation marks, citations, and brackets omitted); *see Sierra Club v. Dep't of Transp.*, 115 Hawaiʻi 299, 167 P.3d 292 (2007) (holding that in general, an agency's conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard, but questions concerning whether an agency has followed proper procedures or considered the appropriate factors in making its determination

are questions of law which are reviewed de novo); *Peroutka v. Cronin*, 117 Hawaiʻi 323, 326, 329–30, 179 P.3d 1050, 1053, 1056–57 (2008) (holding that "[w]here both mixed questions of fact and law are presented, deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency[,]" and that the Chief Election Officer did not clearly err in rejecting signatures on a petition for inclusion on the presidential ballot (citation omitted)).

### B. Jurisdiction

■ "The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." *Captain Andy's Sailing, Inc. v. Dep't of Land and Natural Resources, State of Hawaiʻi*, 113 Hawaiʻi 184, 192, 150 P.3d 833, 841 (2006) (internal quotation marks, brackets, and citation omitted).

### C. Interpretation of a Statute

■ "Interpretation of a statute is a question of law which we review *de novo*." *Kikuchi v. Brown*, 110 Hawaiʻi 204, 207, 130 P.3d 1069, 1072 (App.2006) (internal quotation marks and citation omitted).

## IV. DISCUSSION

### A. The Board had jurisdiction to consider Dupree's appeal

#### 1. Hiraga had the authority to initiate an investigation based on Dupree's letter to him

■ Kahoʻohalahala argues that the Board did not have jurisdiction to hear Dupree's appeal because "[Dupree's] initial complaint to [Hiraga] did not challenge Kahoʻohalahala's voter registration[,]" but instead sought to "declare Kahoʻhalahala an ineligible candidate." However, for the following reasons, we conclude that Hiraga acted within the scope of his authority in construing Dupree's letter as a challenge to Kahoʻohalahala's right to vote as a Lānaʻi resident.

HRS §§ 11–25 and 12–8 impose two distinct responsibilities on county clerks. First, under HRS § 12–8(a), a voter may challenge a candidate's nomination papers based on the

candidate's assertion of residency. *See* HRS § 12–8 (a voter may file an objection to a candidate's nomination papers up to 30 days prior to the primary or special election day); HRS § 12–3 ("Nomination paper: format; limitations[ ]") (a candidate's nomination papers must include the "residence address and county in which the candidate resides"). Upon receipt of an objection to nomination papers, the clerk has the authority to issue a preliminary decision, and to file a complaint in the circuit court if the clerk determines that disqualification may be warranted.[16] HRS § 12–8(d) & (e).

Second, under HRS § 11–25, a registered voter may also challenge another person's right to be or remain a registered voter based on that person's assertion of residency. *See* HRS § 11–25(a) (noting that prior to election day, a voter may challenge another person's right to be or remain a registered voter "for any cause"); HRS § 11–15 (1993 & Supp.1998) ("Application to register") (requiring a person seeking to register to vote to submit an affidavit which includes a declaration of that person's residence). Upon receiving a written challenge signed by the registered voter and "setting forth the grounds upon which it is based," the clerk is required to notify the person challenged and to "investigate and rule on the challenge" as soon as possible. HRS § 11–25(a).

Dupree's letter to Hiraga alleged that although Kahoʻohalahala was from Lānaʻi and had family there, he did not live there. Dupree alleged that Kahoʻohalahala did not own a home, own or manage a business, or work on Lānaʻi. Dupree stated that Kahoʻohalahala had not campaigned on Lānaʻi, and that he had not been seen around the island shopping, going to the post office, filling up his

tank at the gas station, or driving on his way to catch the commuter boat to Maui. In sum, Dupree's letter set forth a detailed factual basis in support of his contention that Kahoʻohalahala was not a resident of Lānaʻi.

As Kahoʻohalahala observes, Dupree's letter focused on Kahoʻohalahala's residency for the purpose of challenging his eligibility as a candidate from Lānaʻi, rather than his right to vote on Lānaʻi. However, that does not mean that Hiraga was required to ignore Dupree's factual allegations insofar as they cast doubt on the legitimacy of Kahoʻohalahala's voter registration on Lānaʻi. To the contrary, Hiraga acted within the scope of his authority when he construed the letter as a challenge to Kahoʻohalahala's right to vote as a Lānaʻi resident, and initiated an investigation on that basis. *See Am. Newspaper Publishers Ass'n v. NLRB*, 193 F.2d 782, 800 (7th Cir.1951) (in unfair labor practice proceeding under the Labor Management Relations Act, court observes that when a complaint "clearly describes an action which is alleged to constitute an unfair labor practice but fails to allege which subsection of the Act has been violated or alleges the wrong subsection, such failure or mistake, if it does not mislead the parties charged, does not prevent the [National Labor Relations Board] from considering and deciding the charge so presented"); *Pergament United Sales, Inc. v. NLRB*, 920 F.2d 130, 135–136 (2d Cir. 1990) (NLRB order finding that employer violated a section of the National Labor Relations Act not charged in the complaint was enforceable, where the employer had notice of the allegedly unlawful acts and the issue had been fully litigated); *cf. Mahaʻulepu v. Land Use Com'n*, 71 Haw. 332, 335, 790 P.2d 906, 908 (1990) ("Ordinarily, deference will be given to decisions of administrative agencies

---

16. HRS § 12–8(d) & (e) provide:
 (d) Except for objections by an officer of a political party filed directly with the circuit court, the chief election officer or the clerk in the case of county offices shall have the necessary powers and authority to reach a preliminary decision on the merits of the objection; provided that nothing in this subsection shall be construed to extend to the candidate a right to an administrative contested case hearing as defined in section 91–1(5). The chief election officer or the clerk in the case of county offices shall render a preliminary decision not later

than five working days after the objection is filed.
 (e) If the chief election officer or clerk in the case of county offices determines that the objection may warrant the disqualification of the candidate, the chief election officer or clerk shall file a complaint in the circuit court for a determination of the objection; provided that such complaint shall be filed with the clerk of the circuit court not later than 4:30 p.m. on the seventh working day after the objection was filed.

acting within the realm of their expertise."); *see also Haole v. State,* 111 Hawai'i 144, 152, 140 P.3d 377, 385 (2006) ("it is well established that an *administrative agency's authority includes those implied powers that are reasonably necessary to carry out the powers expressly granted.* The reason for implied powers is that, as a practical matter, the legislature cannot foresee all the problems incidental to carrying out the duties and responsibilities of the agency.") (2006) (emphasis added).

Hiraga's decision to investigate in these circumstances did not cause unfair surprise or undue prejudice to Kaho'ohalahala. In *Perry v. Planning Commission,* 62 Haw. 666, 685–86, 619 P.2d 95, 108 (1980), this court held that pleadings in administrative proceedings are to be construed liberally rather than technically. In *Perry,* the appellants sought a special permit from the County of Hawaii Planning Commission and the State Land Use Commission to use land within an agricultural district for "quarrying" purposes. *Id.* at 669, 619 P.2d at 99. After the permit was granted, several owners of property adjoining the proposed quarry site appealed, arguing that the permit exceeded the scope of the application by including permission for a screening and crushing operation. *Id.* at 673, 619 P.2d at 101. The circuit court agreed, and invalidated the permit. *Id.* at 685, 619 P.2d at 107. This court reversed, holding that although the appellants originally sought permission only for "quarrying operations," the full extent of the proposed operations was fully disclosed in additional documents, the notice of the public hearing, and during the public hearing, and that communications between the adjacent land owners and the commissions "reveal[ed] an awareness that the proposed use extended beyond" quarrying. *Id.* at 685, 619 P.2d at 107. In finding that the "circuit court's holding is contrary to prevailing principles of administrative law that regard such formalism with disfavor[,]" *id.* at 686, 619 P.2d at 108, this court stated:

> Modern judicial pleading has been characterized as simplified notice pleading. Its function is to give opposing parties fair notice of what the claim is and the grounds upon which it rests. That the same, if not more lenient standard, also governs administrative pleadings is indisputable.

*Id.* at 685, 619 P.2d at 108 (citation, internal quotation marks and ellipsis omitted).

This court went on to cite *Aloha Airlines, Inc. v. Civil Aeronautics Bd.,* 598 F.2d 250 (D.C.Cir.1979) as follows:

> Pleadings in administrative proceedings are not judged by the standards applied to an indictment at common law. It is sufficient if the respondent understood the issue and was afforded full opportunity to justify its conduct during the course of the litigation. Thus, the question on review is not the adequacy of the pleading but is the fairness of the whole procedure.

*Perry,* 62 Haw. at 686, 619 P.2d at 108 (quoting *Aloha Airlines, Inc.,* 598 F.2d at 262 (internal quotation marks and ellipsis omitted)).

■ The analysis of *Perry* is instructive here, since there were multiple forms of relief possible (loss of voter registration in a particular precinct under HRS §§ 11–25 and 11–26, disqualification as a candidate under HRS § 12–8) based on the same underlying factual allegation concerning Kaho'ohalahala's residency. Even in the context of civil pleadings, the failure to expressly plead a particular claim for relief is not dispositive, where the complaint alleges the underlying facts relating to that claim and there is no prejudice to the opposing party. *Suzuki v. State,* 119 Hawai'i 288, 296, 196 P.3d 290, 298 (App.2008) (plaintiff's complaint construed as including a claim for race discrimination).

■ Moreover, Dupree was proceeding pro se when he submitted his letter to Hiraga. Pleadings prepared by pro se litigants should be interpreted liberally. *See Giuliani v. Chuck,* 1 Haw.App. 379, 385–86, 620 P.2d 733, 737–38 (1980) ("The rules [of civil procedure] do not require technical exactness or draw refined inferences against the pleader; rather, they require a determined effort to understand what the pleader is attempting to set forth and to construe the pleading in his favor. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law.").

Kahoʻohalahala does not allege that because Hiraga construed Dupree's letter as a challenge to his residency for voter registration purposes, Kahoʻohalahala was denied full opportunity to be heard in opposition. On the contrary, Kahoʻohalahala acknowledges that Hiraga contacted him the day after receiving the first two complaint letters, informed Kahoʻohalahala that he was construing the complaints as challenges to his voter registration status pursuant to HRS § 11–25, stated that he would conduct an investigation on the matter, and asked Kahoʻohalahala to respond to the allegation. Kahoʻohalahala responded both by alleging that he was a resident of Lānaʻi, and by arguing that the complaint letters were untimely challenges to his nomination papers. Kahoʻohalahala continued to argue this point in his motion to dismiss, his petition for writ of mandamus, and at the October 31, 2008 hearing on the merits. From the start, he was notified of the allegations and took full advantage of the opportunity to respond. Although Kahoʻohalahala disagrees with the outcomes of the various rulings, he was not denied a fair opportunity to respond.

 In sum, Hiraga acted within the scope of his authority in construing the complaint letters as a challenge to Kahoʻohalahala's residency under HRS § 11–25, and investigating on that basis. The Board therefore did not err in denying Kahoʻohalahala's motion to dismiss, and had jurisdiction to hear Dupree's appeal from that aspect of Hiraga's decision.[17] Therefore, the Board did not clearly err in entering FsOF Nos. 3 and 4 in the order to dismiss and FsOF Nos. 2 and 3 in its November 1, 2008 decision. Nor was the Board wrong in entering CsOL Nos. 2 and 3 in the order denying his motion to

dismiss, or CsOL Nos. 2–6 in the Board's November 1, 2008 decision.

2. **The Board did not exceed its jurisdiction by referring to Kahoʻohalahala's candidacy and the residency requirement of the Maui County Charter**

 Hiraga concedes that the Board had jurisdiction to hear Dupree's appeal insofar as it challenged Kahoʻohalahala's voter registration status. However, Hiraga argues that the Board exceeded its jurisdiction in parts of its November 1 Decision by addressing matters related to Kahoʻohalahala's candidacy. Specifically, Hiraga challenges FOF No. 2, which states that Kahoʻohalahala "is a candidate for the Maui County Council for the seat designated for the resident of the Island of Lanaʻi[.]" Hiraga next challenges CsOL Nos. 4 and 5, which summarize Maui County Charter §§ 3–1 and 3–3 and state that the council shall be composed of nine members, including one who is a resident of Lānaʻi, and that to be eligible to run for the seat, the candidate must be a resident for 90 days next preceding the filing of nomination papers. Kahoʻohalahala also argues that the "Maui County Charter references indicate that the Board's decision went beyond its statutory authorization" in that they "suggest that Kahoʻohalahala did not truthfully certify in his nomination papers that he qualified to run for the Maui County Council." Hiraga also challenges CsOL Nos. 3 and 6, which discuss the challenge to Kahoʻohalahala's residency "for election purposes," as well as the portion of the decision holding that Kahoʻohalahala is a resident of Lahaina "[f]or purposes of the 2008 election[.]" Hiraga ar-

17. It is unclear whether Kahoʻohalahala also challenges the sufficiency of Dupree's October 20, 2008 letter of appeal to the Board. However, since we are obligated to ensure the existence of jurisdiction, see Chun v. Employees' Ret. Sys. of the State of Hawaiʻi, 73 Haw. 9, 14, 828 P.2d 260, 263 (1992); Hawaii Mgmt. Alliance Assoc. v. Ins. Comm'r, 106 Hawaiʻi 21, 27, 100 P.3d 952, 958 (2004), we have reviewed that letter and conclude that it sufficiently challenged Kahoʻohalahala's voter registration status for the Board to have jurisdiction to hear the appeal.

HRS § 11–26(a) provides that in instances where the clerk rules on a challenge to voter

registration prior to election day, "the person ruled against may appeal from the ruling to the board of registration[.]" In his October 20, 2008 letter to the Board, Dupree alleged that Kahoʻohalahala "misrepresent[ed] himself on his voter registration, his nomination papers and his sworn affidavit." Dupree's appeal thus sufficiently notified Kahoʻohalahala that Dupree was challenging his residency for voter registration purposes, and Kahoʻohalahala was given a full opportunity to respond. Perry, 62 Haw. at 685–86, 619 P.2d at 108.

gues that by including these passages, the Board not only ruled on Kaho'ohalahala's voter registration, but also exceeded its jurisdiction and ruled on his qualifications as a candidate as well. For the following reasons, we disagree with this interpretation of the Board's ruling.

FOF No. 2, which states that Kaho'ohalahala is a candidate for the Lāna'i seat, is an undisputed fact and the Board did not exceed its jurisdiction by including it because it provided background and context for the appeal. CsOL Nos. 4 and 5 contain extraneous information on the Maui County Charter and the residency requirement for running for a council seat, and it is not clear from the record why the Board included them in its ruling. However, any error in including them is harmless because they were not material to the Board's holding and do not purport to address Kaho'ohalahala's candidacy.

■■■ Finally, although the Board stated in several instances that it was ruling on residency "for election purposes," it is apparent from the Board's decision that it was not purporting to rule on whether Kaho'ohalahala was properly a candidate, but only on whether he was properly registered to vote. First, the phrase "for election purposes" appears in HRS § 11–13, which sets forth the rules for determining residency for voting purposes. HRS § 11–13 ("The following rules shall determine residency for election purposes only[.]"). Thus, the Board's reference to that phrase does not imply that it was making any determination with regard to his candidacy. Second, the limited scope of the Board's holding is also apparent when the challenged phrase is examined in the context of the relief granted by the Board. *Cf. Taylor–Rice v. State,* 91 Hawai'i 60, 75, 979 P.2d 1086, 1101 (1999) (clarifying the scope of a challenged conclusion of law by viewing it in context with the trial court's other findings and conclusions). In the "Decision" section of its November 1, 2008 decision, the Board stated that, pursuant to HRS § 11–25(c), if Kaho'ohalahala chose to appeal, he would be allowed to vote "provided that the ballot is placed in a sealed envelope to be later counted or rejected in accordance with the ruling on appeal." The decision did not mention any possible consequences for Kaho'ohalahala's candidacy under the provisions applicable to a candidate whose nomination papers have been successfully challenged. *See* HRS § 12–8. Accordingly, the Board ruled only on Kaho'ohalahala's right to be or remain a registered voter, which was within the scope of its jurisdiction. HRS §§ 11–25(a) and 11–26(b) (1993). Thus, the Board did not exceed its jurisdiction in entering FOF No. 2, CsOL Nos. 4 and 5, and by stating that it was determining Kaho'ohalahala's residency for purposes of the 2008 election.

**B. The Board did not clearly err in finding that Kaho'ohalahala was not a resident of Lāna'i for the purpose of voting in the 2008 election**

The starting point for our analysis is HRS chapter 11, which is entitled "Elections." HRS § 11–12 (1993) provides that a person may not register to vote in a precinct other than that in which he or she resides. HRS § 11–13 provides in relevant part as follows:

**Rules for determining residency.** For the purpose of this title, there can be only one residence for an individual, but in determining residency, a person may treat oneself separate from the person's spouse. The following rules shall determine residency for election purposes only:

(1) The residence of a person is that place in which the person's habitation is fixed, and to which, whenever the person is absent, the person has the intention to return;

(2) A person does not gain residence in any precinct into which the person comes without the present intention of establishing the person's permanent dwelling place within such precinct;

(3) If a person resides with the person's family in one place, and does business in another, the former is the person's place of residence; but any person having a family, who establishes the person's dwelling place other than with the person's family, with the intention of remaining there shall be considered a resi-

dent where the person has established such dwelling place;

(4) The mere intention to acquire a new residence without physical presence at such place, does not establish residency, neither does mere physical presence without the concurrent present intention to establish such place as the person's residence;

(5) A person does not gain or lose a residence solely by reason of the person's presence or absence while employed in the service of the United States or of this State, or while a student of an institution of learning, or while kept in an institution or asylum, or while confined in a prison;

. . . .

(7) A person loses the person's residence in this State if the person votes in an election held in another state by absentee ballot or in person.

In case of question, final determination of residence shall be made by the clerk, subject to appeal to the board of registration under part III of this chapter.

HRS § 11–13 was enacted in 1970 as part of a comprehensive revision of the State's election law.[18] The House Judiciary Committee stated that "[t]he purpose of the bill is to consolidate, streamline, and update all the material relating to elections presently scattered throughout the statutes." H. Stand. Comm. Rep. No. 1178, in 1969 House Journal, at 852.

Prior to the 1970 recodification, the Hawai'i Revised Statutes provided that "[n]o person shall register or vote in any other precinct than that in which he resides," but provided no guidance on determining residency other than noting that "[i]f any person resides in more than one precinct he may elect in which precinct he will register, but he shall register in one precinct only." HRS § 11–2 (1968).[19] Similar provisions were included in Hawai'i's election laws since at least 1897.[20]

In enacting HRS § 11–13, the Legislature noted that "[r]esidency has been clarified" to address various issues, including the "many instances of voters residing in one area of the State and claiming residency in another." H. Stand. Comm. Rep. No. 1178, in 1969 House

**18.** Although it has been amended several times since then, those amendments are not relevant to the substance of this appeal. For example, in 1975, the introductory paragraph of HRS § 11–13 was amended to eliminate a requirement that if "a husband is a resident of this State, . . . then the residency of the husband shall determine the residency of the wife." *Compare* 1970 Haw. Sess. Laws Act 26, § 2 at 19–20 *with* 1975 Haw. Sess. Laws Act 36, § 1 at 49–50. In 1977, the Legislature, inter alia, eliminated a provision for computing the length of residence. 1977 Haw. Sess. Laws Act 189, § 1 at 403–04. No substantive changes have been made to HRS § 11–13 since then.

Since its adoption in 1970, there have been no published Hawai'i cases interpreting HRS § 11–13.

**19.** HRS § 11–2 (1968) stated as follows:

**Age, place of registering and voting.** Every person who has reached the age of twenty years, or who will have reached the age of twenty years on or before the date of the next election, and is otherwise qualified to register may do so in the precinct in which he resides. No person shall register or vote in any other precinct than that in which he resides; provided, that where there is a mistake in placing the name of the elector on the list of electors of a precinct in which he does not actually reside,

the elector shall nevertheless be allowed to vote therein, if otherwise qualified; and the chairman of the inspectors of election of the precinct where the elector has voted shall notify the county clerk of the error in order that the name of the elector may be placed on the next succeeding list of electors of the precinct where he actually resides.

If any person resides in more than one precinct he may elect in which precinct he will register, but he shall register in one precinct only.

**20.** Civil Laws of the Hawaiian Island 1897, Appendix at § 28, stated as follows:

**Place of registering and voting.** Every person qualified to register may do so in the [p]recinct in which he resides; and no person shall register or vote in any other [p]recinct than that in which he resides.

If any person resides in more than one [p]recinct, he may elect which [p]recinct he will register in; but he shall register in one [p]recinct only.

Provided, however, that at any special election, any person who has previously registered, and since registering has moved his residence to another precinct without having had an opportunity to register therein, may vote in the precinct in which he was last registered.

Journal, at 852;[21] S. Stand. Comm. Rep. No. 830–70, in 1969 Senate Journal, at 1374–75.[22]

In substance, HRS § 11–13 sets forth general requirements for establishing residency in subsection (1), and then provides additional rules in subsections (2)-(7) that address specific situations that may arise. The definition in subsection (1) requires the voter to both have a "habitation ... fixed" in the place where the voter registers, and to have the intention to return to that place whenever absent. That formulation adopts a commonly stated test for determining domicile, which has been used by many other states to evaluate residency for voter registration purposes, *see* Note, *College Student Voting: A New Prescription for an Old Ailment*, 56 Syracuse L.Rev. 145, 151 (2005) (noting that "state election laws uniformly equate 'residence' to 'domicile' "), as well as by this court in cases decided prior to the 1970 recodification, *see In re Hurley*, 30 Haw. 887, 896–97 (1929). Additionally, this court has used similar formulations of the test to evaluate domicile in other contexts. *Yamane v. Piper*, 51 Haw. 339, 340, 461 P.2d 131, 132 (1969) (defining "resident" in terms of "domicile" when determining whether a person is a resident of Hawai'i for income tax purposes); *Blackburn v. Blackburn*, 41 Haw. 37, 40–41 (1955) (construing "resided" to mean "domiciled" in the divorce context); *Powell v. Powell*, 40 Haw. 625, 628–30 (1954) (applying domicile principles to evaluating whether husband was a resident of the Territory of Hawai'i for the purposes of a separate maintenance suit).

HRS § 11–13(4) addresses changes in residency, and provides that "[t]he mere intention to acquire a new residence without physical presence at such place" is not sufficient to establish a new residence. Thus, consistent with HRS § 11–13(1), this section re-

quires both action and intent on the part of the voter before a new residence is established. The requisite intent is to "acquire a new residence." HRS § 11–13(4). This necessarily implies a concurrent intent to abandon his or her prior residence, since a person can have only one residence under the statute. HRS § 11–13 ("there can be only one residence for an individual").

In the instant case, the Board found that Kaho'ohalahala was a Lāna'i resident up to the 2006 election. There is substantial evidence to support that finding. The record establishes that he was born and raised on Lāna'i, had family there, returned periodically over the years, was registered to vote there from 1982 up until 2006, and although he lived and was employed elsewhere at various times, his stated intent was always to return.

However, in 2006, Kaho'ohalahala changed his voter registration to Lahaina, where he was living and working at the time. The Board found that by so doing, he lost his residency on Lāna'i. The Board did not clearly err in reaching that conclusion. By registering to vote in Lahaina, Kaho'ohalahala represented that it was his place of residence. *See* HRS § 11–13 ("there can be only one residence for an individual"); HRS § 11–15 (a citizen seeking to register to vote must submit an affidavit including a declaration of his residence). That statement of intent, together with his habitation on Maui, established Maui as his residence. HRS §§ 11–13(1) & (4).

Courts from other jurisdictions that apply a domicile test have concluded that the act of registering to vote or voting in a new district results in the loss of residence in a district where the voter previously resided. *See*

**21.** Specifically, the House Judiciary Committee report provided:

 [2]a. Residency has been clarified by establishing that a person may only reside in one place and may only register to vote from that place.

 There are many instances of voters residing in one area of the State and claiming residency in another. There are also instances of out-of-state residents declaring the intent of becoming Hawaii state residents prior to the time they are physically located in the State. There

are also many instances of a male resident of this State marrying a female resident of another state, who under the present law may not vote in this State until she has physically located here for one year. Under the present law the voting residence of the above people is vague.
 . . . .

**22.** The relevant portion of the Senate Judiciary Committee report was identical to the House Judiciary Committee report.

*Klumker v. Van Allred,* 112 N.M. 42, 811 P.2d 75, 78–79 (1991) (finding that three brothers were not residents of the county where their family ranch was located because, although they visited the ranch regularly and kept personal items there, they had moved outside the county and voted at those locations); *Kauzlarich v. Bd. of Trs.,* 78 Ariz. 267, 278 P.2d 888, 891 (1955) (husband and wife were not residents of a county for voting purposes even though they purchased property there, moved a house and some personal property onto the premises, and went there each weekend to work on the property with the intention of moving there because they were still living outside the county, where they had registered to vote and voted); *see also Del Rio Indep. Sch. Dist. v. Aldrete,* 398 S.W.2d 597, 603 (Tex.Civ.App.1966) (noting that the place where a person votes is evidence of whether that person's actions corroborate his stated intention to change his residence for voting purposes).

██ Kahoʻohalahala and Hiraga both argue that because Kahoʻohalahala was working for the State of Hawaiʻi when he was on Maui, HRS § 11–13(5) provided that he would not lose his Lānaʻi residency. However, that statute provides that "[a] person does not lose a residence *solely* by reason of the person's presence or absence while employed in the service of ... this State[.]" (emphasis added). HRS § 11–13(5). In the instant case, Kahoʻohalahala did not lose his Lānaʻi residence solely by reason of being employed on Maui. Rather, he lost it because he registered to vote in Lahaina. While HRS § 11–13(5) protects the preexisting residency of a state employee who retains the intent to return to his original residence in the future and acts consistently with that intent, it does not protect someone who, like Kahoʻohalahala, renounces that preexisting residency by registering to vote elsewhere.

Thus, when Kahoʻohalahala registered to vote on Lānaʻi for the 2008 election, he did so not as someone seeking to vote there after a long, unbroken period of residency on the island. Rather, it was as someone who was seeking to change his residency to Lānaʻi after having become a resident elsewhere, in this case Maui. In addition to satisfying the basic residency test of HRS § 11–13(1), i.e., that he had a "habitation ... fixed" on Lānaʻi and that he intended to return there when absent, he also needed to have a sufficient "physical presence" on Lānaʻi under HRS § 11–13(4) to corroborate his intent to abandon his Maui residence.

██ The Board concluded in COL No. 14 that Dupree established that Kahoʻohalahala did not abandon his residence in Lahaina and relocate his permanent residence to Lānaʻi.[23] The Board did not clearly err in reaching that conclusion. The Board found, and there is substantial evidence in the record to establish, that Kahoʻohalahala did not own or work for a business on Lānaʻi, and did not own or rent a house or keep a car on the island. Hiraga and Kahoʻohalahala argue that those findings are immaterial or not dispositive. While they are certainly not dispositive, they are relevant because they support an inference that Kahoʻohalahala had not established the necessary physical presence on Lānaʻi.[24] *Cf. Yamane,* 51 Haw. at 340–41, 461 P.2d at 132–33 (concluding that "the pulling of stakes was complete" and appellee was no longer a Hawaiʻi resident for income tax purposes when he had moved to Wake Island with his wife and children, sold his car, TV, and household furnishings, and did not leave real or personal property or an open bank account in Hawaiʻi).

---

23. In his points of error on appeal, Hiraga contended that COL No. 14 was an inaccurate statement of the law. However, Hiraga failed to offer any argument in support of this contention, and accordingly it is deemed waived. HRAP 28(b)(7) ("Points not argued may be deemed waived.") In any event, although this conclusion does not directly track the provisions of HRS § 11–13, we believe that it fairly summarizes the showing required under HRS § 11–13(1) & (4) in the circumstances of this case.

24. Kahoʻohalahala notes that the letters submitted by eight of the citizen complaints stated that he had a P.O. Box on Lānaʻi. However, the Board did not enter a finding on that issue; in any event, even if Kahoʻohalahala had a P.O. Box on Lānaʻi, there is still insufficient evidence to establish the necessary physical presence on Lānaʻi.

■ The Board further found that Dupree had not seen Kaho'ohalahala at "the post office, either bank, the Lana'i store, the gas station or any restaurant on Lana'i." There was substantial evidence to support that conclusion as well. Once again, while none of those observations are dispositive, they are relevant. The record establishes that Lāna'i is a small, close knit community where residents would likely see each other at such locations. Thus, the observations support the inference that Kaho'ohalahala had not established a sufficient physical presence on Lāna'i.

Although Kaho'ohalahala and his brother's affidavit established that Kaho'ohalahala had been "welcomed" back to his brother's home in July 2008, there was nothing in the record to establish that Kaho'ohalahala actually lived there or anywhere else on Lāna'i in any commonly-understood meaning of the term. Kaho'ohalahala's affidavit states that his "residence is fixed at [ ] Fraser Avenue in Lana'i City." Similarly, his brother's affidavit states that Kaho'ohalahala "presently resides at [ ] Fraser Avenue [and has] resided there since the beginning of July, 2008." However, neither affidavit states that Kaho'ohalahala actually lives at that address, or that he has stayed there for any particular number of nights, keeps personal items there, shares in paying the utility bills, or provides any other details consistent with actual residence at a particular location.

■ Moreover, there is no evidence in the record establishing that Kaho'ohalahala had abandoned his established residence on Maui.[25] To the contrary, the record shows that he continued to work there, as did his wife,[26] and they continued to stay at their home in Lahaina.[27] *Cf. Arakaki v. Arakaki,* 54 Haw. 60, 62, 502 P.2d 380, 382 (1972) (party in a divorce proceeding "had a job, home, family and financial obligations in this state" and accordingly was a Hawai'i resident before becoming an "employee of the Federal Government working in Japan"; this court rejected his claim that he no longer was a Hawai'i resident since "[t]here is insufficient evidence in the record to rebut the presumption that appellant's domicile in Hawai'i continued while he resided in Japan").

■ There was evidence that Kaho'ohalahala visited Lāna'i after registering to vote there in July 2008. Dupree testified that he had heard that Kaho'ohalahala was on Lāna'i for a rally just before the primary, and that he had observed Kaho'ohalahala on Lāna'i at the Aloha Festival in October 2008, when Kaho'ohalahala stayed on the island for several days. McComber also testified that Kaho'ohalahala returned to Lāna'i for the rally, and that he had seen Kaho'ohalahala's brother "pick[ ] him up at the dock and ... drive[ ] him around" on an unidentified number of instances.[28]

These visits do not constitute a sufficient physical presence on Lāna'i to establish that Kaho'ohalahala had changed his residence from Maui to Lāna'i within the meaning of 11–13(4), nor are they sufficient to establish a "habitation ... fixed" on Lāna'i for the pur-

25. Kaho'ohalahala contends in his brief that the Board erroneously put the burden of proof on Kaho'ohalahala with regard to the question of whether he had abandoned his Lahaina residence after registering to vote there in 2006. However, the Board explicitly acknowledged in COL No. 13 that Dupree had both the burden of proof and the burden of persuasion in the proceeding, HRS § 91–10(5) and HAR § 2–51–43(h), and there is nothing in the record to indicate that the Board misapprehended that burden.

26. Although under HRS § 11–13 a person may have a separate residence from that of the person's spouse, the location of one's spouse and children can nevertheless be relevant to determining whether a person actually relocated his or her residence. *Cf. Yamane,* 51 Haw. at 340–

41, 461 P.2d at 132–33 (the fact that appellee had moved to Wake Island with his wife and children, sold their personal belongings, and did not leave real or personal property or an open bank account in Hawai'i, was evidence that he was no longer a resident of Hawai'i).

27. It is unclear whether Kaho'ohalahala and his wife owned or rented their home in Lahaina.

28. FOF No. 13, which states that McComber testified that he "ha[d] not seen Mr. Kaho'ohalahala on Lana'i," is therefore clearly erroneous. However, we find the error was harmless since McComber's testimony was similar to that of Dupree. The brief visits by Kaho'ohalahala to Lāna'i were insufficient to establish that Kaho'ohalahala's "habitation [wa]s fixed" there. HRS § 11–13(1).

poses of HRS § 11–13(1) in these circumstances, i.e., where a previous resident has lost his or her residence by virtue of registering to vote elsewhere, and now seeks to reestablish it.

Although there are no Hawai'i cases directly on point, several cases from other jurisdictions have considered challenges to the registration of voters who sought to return to their original residence after registering to vote elsewhere. Although the voters in those cases had a more significant physical presence in their original areas of residence than Kaho'ohalahala had on Lāna'i in July 2008, the courts nevertheless found that they were not properly registered in those areas.

In *Klumker*, the New Mexico Supreme Court considered a challenge to the voter registration of three brothers in Catron County, Arizona. The brothers were born and raised in Catron County, had extended family there, and had a family homestead which they visited several times a month. 811 P.2d at 76. They kept clothing and other personal effects at the homestead, and stated that they intended to return to the homestead whenever they were absent. *Id.* However, prior to the election in question, the brothers had all moved outside of the county with their immediate family members, had been employed and voted in their new locations, and listed the new location as their residence on their driver's licenses, vehicle registration, tax returns, and bank accounts. *Id.* at 76–77. The district court found that because of a scarcity of employment in Catron County, the brothers were required to maintain a second residence in other locations, but that their habitation remained fixed at Catron County. *Id.* at 77.

Applying New Mexico's elections statute,[29] the New Mexico Supreme Court concluded that the district court erred in finding that the Allred brothers' habitation was fixed in Catron County, since "there was no substan-

tial evidence that they had ... the requisite physical presence in Catron County." *Id.* at 78. Although the brothers were present in the county when they registered to vote, returned to their home in the county as often as once a week and maintained personal property there, "[w]hat is required is not momentary, or occasional or sporadic physical presence; it is *significant* physical presence consistent with the ordinary conception of *living* (or abiding, or residing, or dwelling, or maintaining a habitation) in a place." *Id.* at 78 (emphasis in original). After noting that the brothers had lost their original residency in Catron County because they had registered to vote and had voted elsewhere, the court went on to hold "none of the Allred brothers had a sufficient physical presence in Catron County at the time each registered to vote there in 1988 so as to effect a change in his residence for voting purposes." *Id.* at 79.

In *Kauzlarich*, the Arizona Supreme Court considered an election contest alleging that the Oak Creek School District wrongfully denied a married couple their right to vote in an election. 278 P.2d at 890. The couple purchased property in the Oak Creek district, moved a house and some personal property to the premises, and worked on the house every weekend with the intention of making it their future home. *Id.* at 891. The couple also stated that their residence had always been with the husband's parents, who had moved from Beaver Creek to the Oak Creek district. *Id.* However, the husband had been employed in Beaver Creek for the three years preceding the election, and continued to vote in Beaver Creek after his parents had moved to Oak Creek. *Id.* at 890. The trial court found that the husband and wife were not residents of Oak Creek for the purpose of voting in the election. *Id.*

Applying Arizona's statute for determining

---

**29.** New Mexico's elections statute contained the same basic definition of residency as HRS § 11–13(1), N.M. Stat. Ann. § 1–1–7(A) (West 1978), as well as a list of additional principles which is similar in structure to HRS § 11–13, but with some variations in individual provisions, *see, e.g.,* N.M. Stat. Ann. § 1–1–7(C) ("[A] change of residence is made only by the act of removal joined with the intent to remain in another place.") and (H) ("[A] person loses his residence in this state if he votes in another state in an election requiring residence in that state, and has not upon his return regained his residence in this state under the provisions of the constitution of New Mexico.").

residency,[30] the Arizona Supreme Court affirmed the trial court's determination that the husband and wife were not residents of Oak Creek. *Id.* at 892. Although the couple stated that their residence had always been with the husband's parents, the court found that the "fact that [the husband] voted in Beaver Creek precinct ... long after his parents had moved to [the] Oak Creek district, completely refutes so far as establishing his right to vote in Oak Creek precinct is concerned, the statement that he was residing with them [at that time]." *Id.* at 891. The court also found that the couple's claim that they resided with the husband's parents was not supported by the evidence because they did not purchase groceries for the parents' home or pay the parents rent or board, and the home was too small to accommodate the couple and their two small children in addition to the husband's parents and grandparents, who lived there as well. *Id.* at 892.

While there are some differences in the underlying statutory schemes, the rationale of these cases is instructive in applying HRS § 11–13 to the circumstances of this case. Although someone who has established residency in a place can maintain that residency despite being physically absent as long as he or she intends to return and acts consistently with that intent, *see, e.g., Holton v. Hollingsworth*, 270 Ga. 591, 514 S.E.2d 6, 9–10 (1999) (although voter left his hometown to serve in the military and then lived in a house in another community, voter was properly registered in hometown when he maintained significant ties there and intended to return), different considerations apply once a person has established a new residence elsewhere. HRS § 11–13(4) recognizes that principle by explicitly requiring that the person have a "physical presence" which corroborates the person's intent to abandon his or her prior place of residence.

The requirement of a "physical presence" in HRS § 11–13(4) must be read in pari materia with the other provisions of HRS § 11–13. HRS § 1–16 (1993) ("Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another."). HRS § 11–13(1) requires the voter to have a "habitation [that] is fixed" in order to establish residency, while HRS § 11–13(2) provides that "[a] person does not gain residence in any precinct into which the person comes without the present intention of establishing the person's *permanent dwelling place*[.]" (emphasis added). Both habitation and dwelling place imply that the person is living at the location. Thus, the statute requires that the person seeking to relocate his residence to a new district must establish a dwelling or otherwise live in the district, in the commonly understood meaning of those terms. HRS § 1–14 ("The words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning.").

In arguing that Kaho'ohalahala had a sufficient physical presence on Lāna'i, Hiraga and Kaho'ohalahala both invoke the principle that a person need not live in an area for any particular time in order to establish residence there. *See Anderson v. Anderson*, 38 Haw. 261, 263 (1948) ("[T]he length of actual residence is immaterial to the acquisition of a domicile. A day or an hour will suffice.") (citations omitted); *Powell*, 40 Haw. at 630 ("Length of residence is not a factor where the act and intention to acquire a domicile concur.... No definite period of time is necessary to create a domicile and one day is sufficient provided the *animus manendi* exists.") (citation omitted). As a general proposition, that principle is correct. If a person who has been living on the mainland packs up their belongings and ships them to Ha-

---

**30.** Arizona's elections statute also contains the same basic definition of residency as HRS § 11–13(1), A.C.A. § 55–512(1) (1939), as well as a list of additional principles which is similar in structure to HRS § 11–13, but with some variations in individual provisions, *see, e.g.,* A.C.A. § 55–512(7) ("The place where a man's family permanently resides is his residence unless he be separated therefrom, but if it be a place of temporary establishment for his family, or for transient objects, it is otherwise.") and (9) ("The mere intention to acquire a new residence without act of removal avails nothing; neither does the act of removal without the intention[.]").

wai'i, flies to Honolulu and moves in with family members with the intent of making Hawai'i their permanent home, they could be considered residents from the day they arrived. At the other extreme, consider a person who has a home in Los Angeles, flies to Honolulu and registers to vote, and then returns to Los Angeles on the same day, all with the stated intent of making Honolulu his or her permanent residence. Recognizing such a person as a Honolulu resident would render the physical presence requirement in HRS § 11–13(4) an absurdity. *See State v. Haugen*, 104 Hawai'i 71, 76–77, 85 P.3d 178, 183–84 (2004) ("the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality") (citation omitted). Rather, the voter in such a case would need to have a more significant physical presence in Hawai'i, consistent with the intent to abandon his or her California residence, before he or she could be considered a Hawai'i resident.

Kaho'ohalahala suggests that his absences from Lāna'i were not relevant, since temporary absence from a residence does not result in the loss of that residence absent an intent to leave it. *See* HRS § 11–13(2). Similarly, Hiraga cites *In re Hurley* for the proposition that a county council member or supervisor need not reside exclusively in his district, and may maintain temporary homes in other places. 30 Haw. at 896–97. However, those arguments presuppose that

Kaho'ohalahala had established residency on Lāna'i when he left after registering to vote there in July 2008. Since we conclude that he had not done so, the provisions of HRS § 11–13(2) do not apply to his subsequent absences, and *In re Hurley* is therefore distinguishable.[31]

■ Hiraga contends that "[t]he key to determining residency is the person's state of mind[,]" and suggests that the Board failed to provide proper weight to evidence regarding Kaho'ohalahala's intent.[32] However, that argument is contrary to the plain language of HRS § 11–13(4), which requires an analysis of both intent *and* the existence of a physical presence which corroborates that intent. *Cf. Blackburn*, 41 Haw. at 42, 44 (in rejecting a claim by a party to a divorce proceeding that he had changed his domicile from California to Hawai'i, this court noted that "[i]ntention has always been given large consideration, but claimed intention without acts to support it is not controlling" and "since actions speak louder than words the conduct of a person is the most important evidence of his intention to acquire a domicil[e] in a place") (citations omitted).

Finally, we note that there are provisions in the Hawai'i Administrative Rules that relate to voter registration, HAR §§ 2–51–20 to –31 (2000), including a provision that addresses the determination of residency, HAR § 2–51–25.[33] Hiraga did not refer to any of those provisions in his October 10, 2008 ruling, and the Board's November 1, 2008 deci-

---

31. *In re Hurley* concerned a challenge to the residency of a Kauai county supervisor, Eric Knudsen, in 1927. Knudsen had homes and substantial business interests in both Waimea and Koloa, and split his time between the two locations. 30 Haw. at 890–91. This court concluded that Knudsen was a resident of Waimea. Knudsen had a far more established physical presence in Waimea than Kaho'ohalahala did on Lāna'i. Also, although Knudsen had been registered to vote in Koloa for several months in 1923, he had transferred his registration to Waimea before the 1923 election and remained registered there for the 1925 and 1927 elections. *Id.* at 891–92.

32. In support of this argument, Hiraga cites to a 1986 opinion by the state Attorney General, which concluded that a legislator who temporarily lived outside of his district while his house inside the district was being renovated did not lose his residency in the district. Op. Attn'y Gen. 86–10 (1986), 1986 WL 80018. In reaching that

conclusion, the opinion stated that "[u]nder section 11–13, one's state of mind determines one's place of residence." *Id.*, at *2. However, there was nothing in the opinion to indicate that the legislator had registered to vote in the temporary district or had otherwise acted inconsistent with maintaining his residency in his original district during his temporary absence from it. Thus, the opinion addresses a factual situation distinct from that here, and the opinion's comment about the importance of intent must be considered in light of that factual context. In any event, "Attorney General's opinions are highly instructive but are *not binding upon this court.*" *Taniguchi v. Ass'n of Apartment Owners of King Manor, Inc.*, 114 Hawai'i 37, 46 n. 12, 155 P.3d 1138, 1147 n. 12 (2007) (emphasis in original; citations omitted).

33. HAR § 2–51–25 provides in relevant part:

(a) In addition to the rules for determining residency provided in HRS § 11–13, the fol-

sion contains only a brief reference in COL No. 13 to HAR § 2–51–43(h) ("Rules of evidence as specified in HRS § 91–10 shall be applicable ..." to a hearing before the Board challenging voter registration prior to election day). Neither Hiraga nor Kahoʻohalahala contend here that the Board erred by failing to consider HAR § 2–51–25. While this court has the discretion to notice plain error, HRAP Rule 28(b)(4), we decline to do so here since it does not appear that the outcome would be any different under HAR § 2–51–25.

In sum, the Board did not clearly err in concluding that Kahoʻohalahala was a resident of Lahaina rather than Lānaʻi for purpose of voting in the 2008 general election, and that Dupree's appeal should be sustained as a result. In light of this analysis, Kahoʻohalahala's and Hiraga's challenges to FsOF Nos. 5, 7–8, 12, 14–16, 19 and CsOL Nos. 3–6, 12–14 in the November 1, 2008 decision are without merit.

## V. CONCLUSION

We affirm the November 1, 2008 Findings of Fact, Conclusions of Law, and Decision of the Board of Registration, County of Maui.

lowing shall also be applicable in determining the residence of a person for election purposes:

(1) The residence of a person is that place in which the person's habitation is fixed, where the person intends to remain, and when absent intends to return;

(2) When a person has more than one residence:

(A) If a person maintains a homeowner's property tax exemption on the dwelling of one of the residences, there shall be a rebuttable presumption that the residence subject to the homeowner's property tax exemption is that person's residence;

(B) If a person claims a renter's tax credit for one of the residences, there shall be a rebuttable presumption that the residence subject to the renter's tax credit is that person's residence; and

(C) If a person has not physically resided at any one residence within the year immediately preceding the election, there shall be a rebuttable presumption that the residence in which the person has not resided is not the person's residence.

. . . .

(4) When a person of this State is employed in the service of the United States, is a student of an institution of learning, or is in an institution, asylum, or prison:

(A) A person does not gain or lose residence in a precinct or this State solely by reason on being present in or absent from a precinct or this State; and

(B) A person once having established residency in a precinct shall be allowed to register and vote and to continue to vote from the address at which the person is registered even though, while residing outside of the precinct or the State, the person no longer has a place of abode in the precinct and the person's intent to return to the precinct may be uncertain.

(b) Should a person's status change and the person takes up residency in another precinct or state, there shall be a rebuttable presumption that the new place of residence is that person's residence.

(c) For purposes of this section, a rebuttable presumption is a presumption considered true unless prove false by evidence to the contrary.